# CIRCUIT COURT OF THE CITY OF DANVILLE

Norfolk Southern Ry. Co.

v.

Goodyear Tire & Rubber Co.

September 11, 2000

Case No. CH98-298

By Judge William N. Alexander, II

The issues to be addressed are (1) does the indemnification provision of the siding agreement violate either Virginia Code § 56-119 or public policy and (2) is the indemnification language used in the siding agreement sufficiently clear and unequivocal to permit indemnification for negligence? Section 56-119 provides:

> No contract . . . shall exempt any transportation company from the liability of a common carrier which would exist had no contract been made or entered into and no such contract . . . for exemption from liability for injury or loss occasioned by the neglect or misconduct of such transportation company as a common carrier shall be valid. The liability referred to in this section shall mean the liability imposed by law upon a common carrier for any loss, damage, or injury to freight or passengers in its custody and care as a common carrier.

The second sentence of this statute was approved by the legislature on March 29, 1979, to become effective July 1, 1979. The language of this statute is clear and unambiguous.

The statute construed by the Court in *Johnson, Adm'x v. R. & D. RR.*, 86 Va. 975 (1890), provided:

No agreement made by a common carrier for exemption from liability for injury or loss occasioned by his own neglect or misconduct shall be valid.

In *Chesapeake and Ohio Ry. v. Clifton Forge-Waynesboro Tel. Co.*, 216 Va. 858 (1976), the statute in effect was identical to the present statute except that the second sentence had not been added. C. & O. consented to the location of the telephone company's cables on its right of way, and the two companies entered into an agreement whereby the telephone company assumed all risks of loss or damage to the wire and released the C. & O. from all liability on account thereof. There was a derailment, the cable was damaged, and the telephone company sought payment for the damages from C. & O. Citing *Johnson, supra*, the railroad maintained that the contractual exemption from liability for negligence in the agreement was against public policy and void. In holding that the agreement was valid, the Court observed, "We are of the opinion that the rule followed by a majority of the states that a railway company not acting as a common carrier may exempt itself, by contract, from liability for negligence is sound." *C. & O.*, p. 865. While the damage occurred while C. & O. was operating as a transportation company, the damage did not result from the breach of any duty C. & O., as a common carrier, owed the telephone company. There was no carrier-shipper relationship between C. & O. and the telephone company.

The C. & O. case involved only property damage. In *Southern States Cooperative, Inc. v. Norfolk and Western Ry.*, 219 Va. 191 (1978), the statute in effect, again, was identical to the present statute except that the second sentence had not been added. This case involved facts more closely related to the present case. N. & W. had leased Southern States a former freight station in Luray for use as a retail store. N. & W. furnished one of its boxcars to Southern States for loading at the Southern States' mill in Roanoke, then transported and delivered the loaded car to the Southern States store in Luray, and parked the car on N. & W.'s siding adjacent to the retail store. A Southern States' employee was unloading the boxcar when the door to the car, because of a defect, fell on the employee injuring him. The lease agreement contained an indemnity provision providing that Southern States would indemnify N. & W. for any loss occurring on the leased premises arising out of the use of the premises or occasioned by the negligence of N. & W.

Recognizing that under § 56-119 there is a crucial distinction between when a company operates as a transportation company and when it operates as a common carrier, the Court held that the employee's injuries resulted from N. & W.'s breach of its duty as a common carrier to furnish a boxcar for

unloading by Southern States employees that was reasonably free from discoverable defects and that § 56-119 "prohibits any attempt . . . by a transportation company to relieve itself from liability to one to whom it owes a duty as a common carrier." *Id.*, 219 Va. at 195. The indemnity agreement was held invalid because it did exactly what the code prohibited.

Following the *Southern States v. Norfolk and Western* decision, the legislature amended § 56-119 by adding the second sentence. The statute now makes it crystal clear that "No contract . . . shall exempt any transportation company from the [liability imposed by law upon a common carrier for any loss, damage, or injury to freight or passengers in its custody and care as a common carrier] . . . and no such contract . . . for exemption from liability for injury or loss occasioned by the neglect or misconduct of such transportation company as a common carrier shall be valid." While Norfolk Southern owed a duty of care to Carter, his injuries, at most, resulted from Norfolk Southern's operation as a transportation company and did not result from the railroad's breach of a duty owed to him as a common carrier. There was no carrier-shipper or carrier-passenger relationship between Norfolk Southern and Carter. Without this nexus, the statute does not prohibit the agreement in which Goodyear agreed to indemnify Norfolk Southern for the railroad's own negligence. The interesting question following the amendment of the statute, is whether the Court's decision in *Southern States* would have been the same if the amended statute had been in effect.

Goodyear, relying in large part on *Johnson, supra*, and *Hiett v. Lake Barcroft Community Assn., Inc.*, 244 Va. 191 (1992), contends that public policy prohibits Norfolk Southern from securing itself from liability for its negligent acts through an indemnification provision. This assertion would be correct were the facts of this case different. Hiett was rendered a quadriplegic while participating in a triathlon sponsored by the community association. He had signed an entry form releasing all claims for damages that might result from his participating in the triathlon. In holding that the pre-injury release provision executed by Hiett was prohibited by public policy, the Court, quoting *Johnson, supra*, p. 829, said:

> To hold it was competent for one party to put the other parties to the contract at the mercy of its own misconduct . . . can never be lawfully done where an enlightened system of jurisprudence prevails.

Therein lies the difference between *Hiett* and this case. There was a direct relationship between Hiett and the association. Hiett had entered into a contract with the community association, the tortfeasor. In this case there was

no contract between the injured and the tortfeasor. There was no relationship between the railroad and the injured party. It is also significant that had the Court in *Hiett* given effect to the release, the injured party could have had no possibility of recovery. In this case, if the indemnification agreement is valid, Carter is assured a party against whom recovery can be had. In effect, Goodyear is an insurer of Norfolk Southern. In any case, the indemnification agreement does not release Norfolk Southern from anything as far as Carter is concerned. The indemnification agreement, under the facts of this case and particularly in light of Code § 56-119, does not violate the public policy enunciated in *Hiett* or any other case.

Goodyear's last contention is that the terms of ¶ 21 of the siding agreement do not clearly and unequivocally require indemnification for Norfolk Southern's negligence. Paragraph 21 of the siding agreement provides:

> Goodyear shall indemnify and hold harmless the Railway, its officers, agents, and employees, on account of any accident involving injury to any person, including death, or damage to property, arising out of the maintenance and use of said crossings.

This language is clear, explicit, and unambiguous in that it provides that Goodyear is to indemnify the railroad "on account of any accident involving injury to any person." Carter's claim for injuries resulted from an accident at the crossing and is clearly embraced within this language.

Accordingly, the Court finds that Goodyear must indemnify Norfolk Southern for the claims asserted against Norfolk Southern by Carter.