**CIRCUIT COURT OF THE CITY OF RICHMOND**

Carolyn Aldridge

.v.

Atlantic Rural Exposition et al.

June 13, 2005

Case No. LS-2226-4

BY JUDGE RANDALL G. JOHNSON

This is a personal injury action brought by Carolyn Aldridge against Atlantic Rural Exposition and The State Fair of Virginia (collectively the "State Fair") and Richmond International Raceway ("RIR"). Aldridge alleges that she was injured when she fell because of a defect in the asphalt walkway while attending the Virginia State Fair in October 2003. She claims that RIR, as lessor of the premises, and the State Fair, as lessee of the premises and proprietor of the fair, were both negligent and are jointly and severally liable for her injuries. The case is presently before the court on RIR's motion for summary judgment on its cross-claim against the State Fair.

The cross-claim is based on an indemnity provision in the lease between RIR and the State Fair. The provision provides, in pertinent part, as follows:

> [The State Fair] covenants and agrees to indemnify, defend, and save RIR . . . free and harmless from and against any damage, loss, or liability for injury to . . . persons . . . occasioned by, growing out of, or arising or resulting from . . . any claims arising from any loss, damage, or injury to persons . . . in, on, or about the Premises.[1]

---

[1] The lease also required the State Fair to maintain commercial liability insurance for bodily injury and death, with RIR named as an additional insured, in an amount of at least $10,000,000. That requirement is not presently in dispute.

It is RIR's position that, whether or not it was negligent, the above provision requires indemnification from the State Fair, both with regard to paying any judgment rendered against RIR and in reimbursing RIR for its attorney's fees and costs in defending the suit. The State Fair claims that the provision should not be enforced for three reasons. First, it argues that Va. Code § 11-4.1, which provides that an indemnity provision in a contract "relating to the construction, alteration, repair, or maintenance of a building, structure, or appurtenance thereto . . . is against public policy and is void and unenforceable," applies to the provision at issue here. Second, it argues that the indemnity provision should not be enforced because RIR violated Va. Code § 55-225.3, which generally requires a landlord to comply with all applicable building codes to keep premises in a fit and habitable condition. Third, it claims that the indemnity provision should not be enforced because any such provision that seeks to relieve a party of liability for future acts of negligence resulting in personal injury is against public policy and void. The court agrees with the State Fair's third argument. It will not address the first two.

*Johnson's Adm'x v. Richmond & Danville RR.*, 86 Va. 975, 11 S.E. 829 (1890), was an action by the administrator of a deceased member of a quarry firm. Plaintiff alleged that the decedent's death was caused by the negligence of the railroad company that owned the right of way from which the quarry firm was removing a granite bluff. An agreement between the railroad and the firm contained a provision relieving the railroad from liability for injuries or death sustained by members of the firm "from any cause whatever," and also required the firm to defend any suit brought against the railroad and pay any judgment, together with all costs incident thereto, that the railroad might suffer. The Supreme Court held that the provision was void:

> To uphold the stipulation in question would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void.

86 Va. at 978.

In *Appalachian Power Co. v. Sanders*, 232 Va. 189, 349 S.E.2d 101 (1986), a plaintiff sought damages against a lessor, Appalachian Power Company, and a lessee, Patrick County-Stuart Chamber of Commerce, for injuries sustained in a fall on leased premises during the 1978 Patrick County

Harvest Festival. The lease between Appalachian and the Chamber contained an indemnity provision in which the Chamber agreed to indemnify Appalachian against claims arising out of the use of the premises, and Appalachian filed a cross-claim against the Chamber based on that provision, just as RIR has filed a cross-claim against the State Fair here. After a jury returned a verdict against both defendants, jointly and severally, the trial court enforced the indemnification agreement, ordering the Chamber to reimburse Appalachian for all sums paid by Appalachian on the judgment plus attorney's fees and costs incurred in defending the action. Both defendants appealed the entry of judgment on the verdict, and the Chamber appealed the enforcement of the indemnity agreement.

On appeal, the Supreme Court reversed the judgment against Appalachian. Pointing out that Virginia law requires a lessor to have actual knowledge of a defect in premises in order to sustain a finding of negligence against the lessor, and, noting the absence in the record of any evidence of such actual knowledge on the part of Appalachian, the Court held that the verdict against Appalachian was erroneous as a matter of law. The verdict against the Chamber was affirmed. Also affirmed was the trial court's enforcement of the indemnity agreement.

The indemnity provision in *Appalachian Power* provided:

> As part of the consideration aforesaid, Tenant agrees to save harmless the Landlord from any and all claims of whatever nature arising out of the use of said parcel for the purposes aforesaid, and will indemnify the Landlord from any loss, of whatever nature, that may occur through said use by the Tenant.

232 Va. at 195-96.

In upholding the provision, the Supreme Court first noted that it was the Chamber's position that any negligence the plaintiff may have proved "lies solely in [Appalachian's] failure to discover and warn the plaintiff of the defect," 232 Va. at 196, and that the Chamber's "only argument on brief is that the language of the indemnity clause was not sufficiently explicit to indemnify [Appalachian] against damages resulting from its own negligence." *Id.* The Supreme Court rejected that argument, stating that "[b]ecause we have held that [Appalachian] was not guilty of actionable negligence, the Chamber's argument fails for want of its premise." *Id.* In a footnote, the Court noted:

A private property owner, including a common carrier while acting as such, may lawfully contract to indemnify itself against its own negligence without offending public policy, *Chesapeake and O. Ry. v. Telephone Co.*, 216 Va. 858, 224 S.E.2d 317 (1976), and the Chamber does not challenge the indemnity contract on public-policy grounds.

232 Va. at 196, n. 3.

Finding that the indemnity provision was "a crucial part of the consideration for the lease," and that it was "mutually executed as an arms-length contract by parties standing upon an equal footing," 232 Va. at 196, the Court affirmed the trial court's enforcement of it.

In *Hiett v. Lake Barcroft Community Assoc.*, 244 Va. 191, 418 S.E.2d 894 (1992), Robert Hiett was injured when he struck his head on the lake bottom or an object beneath the surface of the water while participating in the swimming event of a triathlon competition sponsored by the Lake Barcroft Community Association. He sued the association, the member of the association who asked him to participate in the competition, and the person who organized and directed the competition. The entry form signed by Hiett and the other competitors contained the following provision:

> In consideration of this entry being accept[ed] to participate in the Lake Barcroft Teflon Man Triathlon I hereby, for myself, my heirs, and executors waive, release and forever discharge any and all rights and claims for damages which I may have or m[a]y hereafter accrue to me against the organizers and sponsors and their representatives, successors, and assigns, for any and all injuries suffered by me in said event.

244 Va. at 192-93.

In a preliminary ruling, the trial court held that "absent fraud, misrepresentation, duress, illiteracy, or the denial of an opportunity to read the form, the entry form was a valid contract and that the pre-injury release language in the contract released the defendants from liability for negligence." 244 Va. at 193. The trial court also dismissed the association member who asked Hiett to participate, holding that she was not an agent of the association. The remaining parties proceeded to trial solely on the issue of whether there was constructive fraud and misrepresentation by the defendants such as would invalidate the waiver-release language in the entry form. After Hiett had rested

his case, the trial court granted the defendants' motion to strike the evidence. Hiett appealed.

On appeal, Hiett argued that, since the decision in *Johnson's Adm'x v. Richmond & Danville RR.*, the law in Virginia "has been settled that an agreement entered into prior to any injury, releasing a tortfeasor from liability for negligence resulting in personal injury, is void because it violates public policy." *Id.* at 194. The defendants argued that Supreme Court decisions after *Johnson* "have established that pre-injury release agreements such as the one before [the Supreme Court] do not violate public policy." *Id.* The Court agreed with Hiett and reversed the trial court's ruling. In doing so, the Court did not simply say, as it could have, that release agreements with persons who later become injured, as opposed to indemnity provisions in agreements between subsequent joint-tortfeasors, are void. Indeed, this court believes a strong argument could be made that there is a very real difference between a person or other entity being relieved of liability, as was attempted in *Hiett* and *Johnson*, and a person or other entity be indemnified for such liability, as was attempted in *Appalachian Power*. In fact, at least one Virginia circuit court judge has recognized such a difference. *Norfolk Southern Ry. v. Goodyear Tire & Rubber Co.*, 53 Va. Cir. 245 (Danville 2000) (by Judge Alexander). Instead, the Supreme Court said *all* agreements relieving persons or other entities of liability for, or which require indemnification for, such persons' or other entities' subsequent negligence are void. A proper reading of *Hiett* makes this abundantly clear.

First, the Supreme Court discussed its holding in *Johnson*. In doing so, it pointed out that "its holding was not based on the fact that the railroad company was a common carrier. Rather, this Court found that such provisions for release from liability for personal injury which may be caused by future acts of negligence are prohibited 'universally'." 244 Va. at 195. The court then said:

> As noted by Hiett, the cases following *Johnson* have not eroded this principle. Instead, this Court's decisions after *Johnson* have been limited to upholding the right to contract for the release of liability for *property damage*, as well as indemnification from liability to third parties *for such damage*.

*Id.* (emphasis added).

Next, the Court discussed *Chesapeake and O. Ry. v. Telephone Co.*, 216 Va. 858, 224 S.E.2d 317 (1976), and *Nido v. Ocean Owners' Council*, 237 Va. 664, 378 S.E.2d 834 (1989), both of which upheld agreements releasing future negligence liability. In fact, *Chesapeake and O. Ry. v. Telephone Co.* was cited in *Appalachian Power* for the proposition that indemnification provisions do *not* offend public policy. *See* quote, *supra*. The Court noted, however, that *Chesapeake and O.* involved a claim for property damage only. It did not involve a claim for personal injury. Likewise, the Court noted that, although the disputed provision in *Nido* attempted to release the owners' council from liability for injury to persons as well as property, "the issue before the Court involved only the property damage portion of the clause." 244 Va. at 195, n. 1. The Court then said:

> Other cases decided by this Court since *Johnson* have upheld provisions for indemnification against future property damage claims. In none of these cases, however, did the Court address the issue whether an indemnification provision would be valid against a claim for personal injury.

*Id.*

Continuing, the Court noted that another of its cases, *Richardson-Wayland v. VEPCO*, 219 Va. 198, 247 S.E.2d 465 (1978), also involved an indemnity provision purportedly covering property damage and personal injury claims. The *Hiett* court observed that *Richardson-Wayland* held only that the provision did not violate public policy as it related to claims for property damage. The issue of personal injury was not reached. 244 Va. at 195-96.

With regard to *Appalachian Power*, the Court said:

> This Court also addressed an indemnification clause covering liability for both personal injury and property damage in *Appalachian Power Co. v. Sanders.* . . . However, this Court was not required to rule on the validity of the clause with respect to a claim for personal injury, based on its holding that the party asserting indemnification was not guilty of actionable negligence.

*Id.* at 196.

The last case in this line of cases discussed by the Supreme Court in *Hiett* was *Kitchin v. Gary Steel Corp.*, 196 Va. 259, 83 S.E.2d 348 (1954), in which the Court held that an indemnification agreement between a prime

contractor and its subcontractor "was not predicated on negligence. For this reason, th[e] Court held that there was no merit in the subcontractor's claim that the agreement violated public policy as set forth in *Johnson*." *Id*. The Court then concluded:

> We agree with Hiett that the above cases have not modified or altered the holding in *Johnson*. Therefore, we conclude here, based on *Johnson*, that the pre-injury release provision signed by Hiett is prohibited by public policy and, thus, it is void.

*Id*.

This court concludes that the above holding is applicable here. This case involves personal injury. The cases cited in *Hiett*, with the exception of *Appalachian Power*, did not, or, perhaps more accurately, the Supreme Court's decisions in those cases did not reach the issue of personal injury. What is significant is the Supreme Court's repeated emphasis on the fact that those cases did *not* reach that issue. If the real distinction between *Johnson* and *Appalachian Power* is direct release versus indemnity, as RJR argues it is, the Supreme Court could very easily have said so. Instead, *Hiett* repeatedly stressed the distinction between provisions involving personal injury and provisions involving property damage. Put another way, in order to adopt RJR's argument, this court would have to read one of the passages quoted above as follows:

> As noted by Hiett, the cases following *Johnson* have not eroded this principle. Instead, this Court's decisions after *Johnson* have been limited to upholding the right to contract for the release of liability for property damage, as well as indemnification from liability to third parties.

244 Va. at 195.

That, however, is not what the Court said. What the Court said was:

> As noted by *Hiett*, the cases following *Johnson* have not eroded this principle. Instead, this Court's decisions after *Johnson* have been limited to upholding the right to contract for the release of liability for property damage, as well as indemnification from liability to third parties *for such damage*.

*Id*. Emphasis added.

Since the phrase "such damage" unquestionable refers to property damage, and since *Hiett* repeatedly states that the reason release *and* indemnification agreements were upheld in cases decided after *Johnson* is that none of those cases involved claims for personal injury, or at least claims for personal injury that were considered on appeal, this court can only conclude that agreements that *do* involve claims for personal injury are against public policy and void, and the court so holds. RJR's motion for summary judgment will be denied.

In making this ruling, the court is not holding that the indemnity agreement is void as to attorney's fees and costs if RJR is not found to be guilty of negligence, since such a circumstance would appear to bring this case within the holding of *Appalachian Power*. That issue, however, cannot be addressed until after verdict.